

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00866-CV

In the Interest of **E.A.M.V.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-02217
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: May 1, 2019

AFFIRMED

Father appeals from a judgment terminating his parental rights to his child, E.A.M.V.[1] In

three issues, Father argues (1) the trial court erred in finding that he failed to admit paternity under

section 161.002(b)(1) of the family code; (2) the evidence was legally or factually insufficient to

support the trial court's finding that termination was in E.A.M.V.'s best interest under section

161.001(b)(2) of the family code; and (3) the evidence was legally or factually insufficient to

support the trial court's finding that termination was not based on the circumstances listed in

section 161.001(c) of the family code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(2), 161.002,

161.001(c). We affirm the trial court's judgment.

---

[1]To protect the identity of a minor child in an appeal from a judgment terminating parental rights, we refer to the appellant as "Father" and to the child by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

The Texas Department of Family and Protective Services filed an original petition claiming Father was the alleged father of E.A.M.V. and seeking to terminate his parental rights. At the time, E.A.M.V. was only three months old. The Department was appointed E.A.M.V.'s temporary managing conservator. About a year later, the case was tried to the trial court. A Department caseworker, Father, and E.A.M.V.'s mother testified at trial. Father and E.A.M.V.'s mother, who were both in prison at the time of trial, testified by telephone. After hearing the evidence, the trial court terminated Father's parental rights on the ground that he did not respond to the Department's petition by timely filing an admission of paternity. *See* TEX. FAM. CODE ANN. § 161.002(b)(1). Alternatively, the trial court terminated Father's parental rights because it found, by clear and convincing evidence, four statutory grounds to support termination: (1) Father had been convicted of the offense of indecency with a child; (2) Father had constructively abandoned E.A.M.V.; (3) Father had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain E.A.M.V.'s return; and (4) Father had knowingly engaged in criminal conduct that had resulted in his conviction for an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the Department's petition. *See id*. § 161.001(b)(1)(L),(N),(O),(Q). The trial court also found that termination of Father's parental rights would be in E.A.M.V.'s best interest. *See id*. 161.001(b)(2). Father appealed.[2]

## FAILURE TO ADMIT PATERNITY

In his first issue, Father argues the trial court erred in terminating his parental rights on the ground that he did not admit paternity. Section 161.002(b)(1) of the family code provides the court

---

[2]The trial court's judgment also terminated the parental rights of E.A.M.V.'s mother, but she did not appeal.

may summarily terminate the rights of an alleged father if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." *See id*. § 161.002(b)(1). "There are no formalities that must be observed when filing an admission of paternity or for such an admission to be effective." *In re U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio 2013, no pet.).

Here, Father argues the trial court erred in terminating his parental rights under section 161.002(b)(1) because the record shows that he admitted his paternity of E.A.M.V. in a letter he wrote to the trial court and in his trial testimony. We agree that the record establishes that Father admitted paternity within the meaning of section 161.002(b)(1). About two weeks after the Department filed its petition, Father filed a letter with the trial court clerk, stating: "I am writing this letter to inform the court that I am the father of [E.A.M.V.] . . . the child in case number 2017-PA-02217 and I do not deny parentage." In the letter, Father asked the court to appoint his mother as sole managing conservator of E.A.M.V. while he served his prison term. Father also asked the trial court to appoint an attorney to represent him and to allow him time to prepare his defense. Furthermore, at trial, Father testified, "I am the biological father of [E.A.M.V.]." Father's letter to the trial court and his trial testimony constituted admissions of paternity within the meaning of section 161.002(b)(1) of the family code. *See In re S.R.J.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied) (concluding father's appearance and participation at trial, including his sworn admission that he was the children's father and trial counsel's advocacy against parental termination, amounted to an admission of paternity under section 161.002(b)(1)); *In re U.B.*, 2013 WL 441890, at *2 (holding that alleged father's letter to trial judge referring to the children as "my children" and alleged father's testimony that he was the father of the children constituted an admission of paternity consistent with section 161.002(b)(1)).

We hold the trial court erred in concluding that Father did not respond to the Department's petition by timely filing an admission of paternity and in terminating his parental rights based on section 161.002(b)(1). *See In re S.R.J.-Z.*, 537 S.W.3d at 682; *In re U.B.*, 2013 WL 441890, at \*2. We sustain Father's first issue; however, the trial court also found that the Department proved, by clear and convincing evidence, four statutory grounds under section 161.001(b)(1) and that termination was in E.A.M.V.'s best interest under section 161.001(b)(2). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(L),(N),(O),(Q); (b)(2). Because the trial court also terminated Father's parental rights based on section 161.001(b), we cannot reverse the judgment unless we conclude that it cannot be supported under section 161.001(b).

## SECTION 161.001(B) AND THE CHILD'S BEST INTEREST

In his second issue, Father argues the evidence was legally or factually insufficient to support the trial court's finding that termination of his parental rights was in E.A.M.V.'s best interest. Father does not challenge the sufficiency of the evidence to support the trial court's findings as to any of the statutory grounds under section 161.1001(b)(1). *See id.* § 161.001(b)(1)(L),(N),(O),(Q). Father only challenges the sufficiency of the evidence to support the trial court's best interest finding. *See id*. § 161.001(b)(2).

When reviewing the sufficiency of the evidence, we apply the well-established standards of review for legal and factual sufficiency. *See* Tex. Fam. Code Ann. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency). In evaluating a child's best interest, we consider the non-exhaustive *Holley* factors.[3] *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013); *Holley v. Adams*,

---

[3]These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed

544 S.W.2d 367, 371-72 (Tex. 1976). However, "[t]he absence of evidence about some of these [factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). We also consider the factors set forth in section 263.307(b) of the Texas Family Code.[4] *See* TEX. FAM. CODE ANN. § 263.307(b). Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 28. A best interest analysis may consider direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

With these standards and factors in mind, we consider the trial evidence as it relates to E.A.M.V.'s best interest. The evidence showed that E.A.M.V. was only fifteen months old at the time of trial. E.A.M.V. had been removed from her mother's care when she was three months old

---

placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

[4] These factors are considered in determining whether the parent is willing and able to provide the child with a safe environment: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

and had been placed with a relative, her great-grandmother. Father had never met E.A.M.V. in person. He had only seen E.A.M.V. once by way of video conference. At the time of trial, Father was serving a prison sentence for possession of a firearm by a felon. Father and E.A.M.V.'s mother have an older child, who had been removed from his parents' care as a baby. In the older child's case, Father and the Department had reached a settlement agreement and Father had retained his parental rights.

A caseworker testified that the Department had serious concerns about Father, who was a lifetime registered sex offender. Father had been convicted of indecency with a child. The victim in that case was a very young child. Based on these circumstances, the caseworker believed Father posed a danger to E.A.M.V., who was still very young and vulnerable. Furthermore, the caseworker was concerned because Father had told her that he planned to "take custody" of E.A.M.V. when he was released from prison. Additionally, the caseworker pointed out that Father did not complete any of the services in his service plan. At the beginning of the case, the caseworker had provided Father a copy of the service plan and asked Father if there were any services available at the prison where he was incarcerated at the time. Father wrote back saying that none of the services the Department requested were offered at the prison where he was incarcerated. The caseworker characterized her dealings with Father as "very rocky." Father became upset and showed his anger very quickly. The caseworker believed Father did not have the ability to parent E.A.M.V., to provide her with a safe and stable home environment, or to meet her physical and emotional needs.

The caseworker further testified that E.A.M.V. was living with the child's great-grandmother, who had cared for E.A.M.V. for virtually all her life. E.A.M.V. referred to her great-grandmother as her mother and was "thriving" in her current environment. The Department's long-term plan for E.A.M.V. was adoption by her great-grandmother. However, the caseworker also

said the Department would be reevaluating E.A.M.V.'s current placement based on new information. The caseworker had just learned that the great-grandmother's daughter, who frequently visited the great-grandmother's home, had been charged with several serious criminal offenses in the past. The caseworker indicated that another relative, a cousin, might be a viable placement option for E.A.M.V., but she was not certain about this.

In his testimony, Father admitted that he had been convicted of indecency with a child, a four-year-old girl. Nevertheless, Father claimed he would not be a danger to E.A.M.V. Father explained that he planned to use legal means to regain custody of his children upon his release from prison. Father said he never received a copy of the service plan in this case. However, Father also said the caseworker had come to the county jail to talk to him about the case. Father acknowledged that his prison release date was uncertain; he could be released in the next six months, or he could remain in prison until 2025. Father said that he would like for E.A.M.V. to be placed with his mother. Finally, E.A.M.V.'s mother testified that she believed that Father would never hurt E.A.M.V.

A parent's sexual abuse of another child is a relevant consideration in deciding if the parent poses a danger to the physical and emotional well-being of his own child. *In re S.G.*, No. 01-18-000728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet. h.) (recognizing that the factfinder was free to conclude that a parent who had been convicted of aggravated assault of a child posed a physical and emotional danger to his own child); *In re R.J.C.*, 04-09-00106-CV, 2010 WL 816188, at *2 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (concluding evidence was legally and factually sufficient to support the termination of parental rights based on the appellant's sexual behavior towards at least two other children, a conviction for aggravated sexual assault of a child, and concerns about the effect appellant's sexual behavior might have on the child the subject of the termination suit). Additionally, "[a] parent's

incarceration is relevant to his ability to meet the child's present and future physical and emotional needs." *In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.). "[A] parent's incarceration at the time of trial makes the child's future uncertain." *Id.*

Here, E.A.M.V. was too young to express her desires, but E.A.M.V. had no bond with Father. Father had been incarcerated for the entirety of this case and his prison release date was uncertain. Based on this evidence, the trial court could have determined that Father, through his own course of conduct, had put himself in a position in which he was unable to meet E.A.M.V.'s present and future physical and emotional needs. Additionally, because Father had committed a sexual crime against another child, the trial court was free to conclude that Father posed a danger to E.A.M.V.'s physical and emotional well-being. *See In re S.G.*, 2019 WL 1448870, at *9; *In re R.J.C.*, 2010 WL 816188, at *2. Additionally, the trial court could have disbelieved the testimony from Father and E.A.M.V.'s mother that Father would not harm E.A.M.V. *See In re J.B.P.*, 180 S.W.3d at 573 (recognizing that the appellate court defers to the factfinder on witness credibility issues). Finally, given the other circumstances indicating that termination was in E.A.M.V.'s best interest, evidence that the Department had received new information and was going to have to reevaluate its plans for E.A.M.V.'s permanent placement is not dispositive. *See In re C.H.*, 89 S.W.3d at 28 (noting that a lack of "definitive plans for permanent placement and adoption [is not] the dispositive factor;" the question "is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the [Department] is unable to identify with precision the child's future home environment.").

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in E.A.M.V.'s best interest. *See* TEX. FAM. CODE

ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment). Therefore, the evidence was legally and factually sufficient to support the trial court's best interest finding. We overrule Father's second issue.

### CIRCUMSTANCES PROHIBITING TERMINATION

In his third issue, Father argues the evidence was legally or factually insufficient to support the trial court's finding that termination was not based on evidence of the circumstances listed in section 161.001(c) of the family code. Section 161.001(c) prohibits a court from finding grounds for termination of parental rights based on evidence that the parent (1) "homeschooled the child;" (2) "is economically disadvantaged;" (3) "has been charged with a nonviolent misdemeanor offense," with certain enumerated exceptions; (4) "provided or administered low-THC cannabis to a child for whom low-THC cannabis was prescribed under Chapter 169, Occupations Code;" or (5) "declined immunization for the child for reasons of conscience, including a religious belief." TEX. FAM. CODE ANN. § 161.001(c). The only authority Father cites to support this argument is section 161.001(c) itself.

We have concluded that section 161.001(c) does not include language imposing a burden on the Department to provide proof that termination is not based on the circumstances listed in the statute. *In re D.B.*, No. 04-18-00651-CV, 2019 WL 691433, at *4 (Tex. App.—San Antonio Feb. 20, 2019, pet. filed.); *accord In re J.D.-V.*, No. 04-18-00743-CV, 2019 WL 938290, at *3 (Tex. App.—San Antonio Feb. 27, 2019, pet. filed) ("[T]he Department does not carry a burden of proof under section 161.001(c)."). Section 161.001(c) prohibits a court from finding grounds for termination based on evidence of any of the listed circumstances. *In re D.B.*, 2019 WL 691433, at

\*4; *In re J.D.-V.*, 2019 WL 938290, at \*3 (noting that section 161.001(c) "merely limits the bases that a court may use to order a parental termination under section 161.001(b).").

In the present case, the Department was not required to provide proof that the grounds for termination were not based any of the circumstances listed in section 161.001(c). *See In re J.D.-V.*, 2019 WL 938290, at \*3; *In re D.B.*, 2019 WL 691433, at \*4. Additionally, the record does not contain any evidence that Father homeschooled E.A.M.V., was economically disadvantaged, had been charged with a nonviolent misdemeanor, administered low-THC cannabis to E.A.M.V., or declined to have E.A.M.V. immunized. Therefore, the trial court could not have violated section 161.001(c). *See In re D.B.*, 2019 WL 691433, at \*4 (concluding the trial court could not have violated section 161.001(c) when the record did not contain any evidence of the circumstances listed in the statute). We overrule Father's third issue.

## CONCLUSION

We affirm the trial court's judgment.

Irene Rios, Justice